**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE:

ROBERT EARL BROWN,                                        Case No. 05-35004-LMK

    Debtor                                                              Chapter 13

_____/

**MEMORANDUM OF OPINION**

    THIS MATTER came on for hearing on May 25, 2006, upon the Objection of Wells Fargo Financial ("Wells Fargo") to confirmation of the Debtor's Second Amended Chapter 13 Plan. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 151 and 157(b)(2)(L). This Memorandum Opinion constitutes the Court's findings of facts and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth herein, Wells Fargo's Objection is overruled.

**FINDINGS OF FACT[1]**

    The Debtor filed his Chapter 13 bankruptcy petition on November 4, 2005, after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Prior to filing his petition, on April 8, 2005, the Debtor financed the purchase of a motor vehicle, a 2002 Lincoln LS ("Vehicle"), which is pledged as collateral for the purchase-money debt owed to Wells Fargo. Wells Fargo's lien is perfected in accordance with Florida Statute § 319.27 (2005), and it is listed as the first lien holder on the Florida certificate of title. The debt owed to Wells Fargo was incurred within the 910-day period preceding the filing of the Debtor's Chapter 13 case, and the Vehicle was acquired for the personal use of the Debtor.

    On February 21, 2006, Wells Fargo filed a Motion to Lift Automatic Stay, or in the Alternative, Motion for Adequate Protection (Doc. 34). The Debtor did not respond or otherwise oppose this motion, and the Court entered an Order Granting Relief from the Stay to Wells Fargo on March 16, 2006 (Doc. 41). The Debtor's initial Chapter 13 Plan, filed along with his petition,

---

    [1] All facts were stipulated to by the Debtor and Wells Fargo or are matters of record.

identified Wells Fargo as a secured creditor and proposed that the Vehicle "be surrendered in full satisfaction of the debt." The Debtor filed his First Amended Chapter 13 Plan on April 7, 2006 (Doc. 44), in which he again identified Wells Fargo as a secured creditor with a lien on the Vehicle, but added the descriptive assertion that its claim is a "910 Car Claim-Bifurcation Prohibited." The First Amended Plan also modified the treatment of the collateral, proposing that, "upon confirmation, collateral shall be surrendered in full satisfaction of debt." The Debtor's Second Amended Chapter 13 Plan, filed on May 23, 2006, contains the same language and treatment of Wells Fargo and its collateral as the First Amended Plan.

Wells Fargo filed its Objection to Confirmation of the Debtor's Chapter 13 Plan on April 20, 2006 (Doc. 47), alleging that the elimination of its right to seek an unsecured deficiency claim was contrary to the confirmation requirements of 11 U.S.C. § 1325(a), such that the Plan could not be confirmed. The Debtor counters that the Bankruptcy Code, as amended by BAPCPA, not only allows for this result, but mandates it. The Debtor and Wells Fargo briefed the issue and presented their arguments to the Court at the hearing. Since this was the only outstanding confirmation issue, the Court confirmed the Debtor's case, subject to the outcome of the Objection, and entered a confirmation order on June 7, 2006 (Doc. 68). The only issue before the Court, therefore, is whether or not 11 U.S.C. § 1325(a), as amended by BAPCPA, allows the Debtor to surrender the Vehicle in full satisfaction of his debt to Wells Fargo or whether Wells Fargo is entitled to assert an unsecured deficiency claim after its collateral is surrendered and liquidated in a commercially reasonable manner.

## CONCLUSIONS OF LAW

Section 1325(a)(5)[2] of the Bankruptcy Code, as amended by BAPCPA, provides that the

---

[2](a) Except as provided in subsection (b), the court shall confirm a plan if–
  (5) with respect to each allowed secured claim provided for by the plan –
    (A) the holder of such claim has accepted the plan;
    (B) (i) the plan provides that –
    (I) the holder of such claim retain the lien securing such claim until the earlier of–

court "shall confirm" a plan if it treats an allowed secured claim in one of three ways. 11 U.S.C. § 1325(a). First, the creditor can accept its proposed treatment under the plan. 11 U.S.C. § 1325(a)(5)(A). In this case, Wells Fargo has not accepted its treatment. Alternatively, the debtor can treat the claim in accordance with § 1325(a)(5)(B), and provide for the creditor to retain the lien until the underlying debt is paid off or until discharge, whichever is earlier, and provide that the "property to be distributed under the plan" is worth at least the amount of the allowed secured claim. Finally, the debtor can surrender the collateral securing the claim in accordance with § 1325(a)(5)(C), which is what the Debtor in this case proposes to do. The language of §1325(a)(5)(C) is unchanged from the pre-BAPCPA version of the Code; however the hanging paragraph, located at the end of § 1325(a)(9) ("Hanging Paragraph") modifies the entirety of § 1325(a)(5) by limiting the way a debtor can treat certain secured claims.

Pre-BAPCPA, §506(a)[3] of the Code provided for the bifurcation of secured claims into

---

        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
   (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
   (iii) if–
     (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
      (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
  (C) the debtor surrenders the property securing such claim to such holder; 11 U.S.C. § 1325(a)(5)(2005).

[3]    An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . ., is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . ., and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. . . . Such value shall be determined in light of the purpose of

-3-

unsecured and secured portions based on the value of the collateral, without regard as to when such collateral was purchased. If a debtor chose to retain and pay for the collateral in his Chapter 13, he could use § 506(a) to "cramdown" the debt by paying the value of the collateral as a secured claim through his plan, while paying the unsecured portion as an unsecured claim pro rata with other unsecured creditors throughout the life of the plan. If a debtor instead chose to surrender the collateral, the creditor would either file an estimated unsecured deficiency claim using § 506(a) bifurcation, or it would foreclose its lien on the collateral, sell it in a commercially reasonable manner, apply to proceeds of such sale to the debt owed, and then file a claim for the actual unsecured deficiency balance. The resulting deficiency balance was allowed as an unsecured claim and paid pro rata with the other unsecured creditors. *See, e.g., In re Matthews*, 313 B.R. 489 (Bankr. M.D. Fla. 2004). Bifurcation under § 506(a) is still possible for claims which are not within the scope of the Hanging Paragraph; however, the Hanging Paragraph limits the applicability of 506(a) bifurcation in certain situations, depending on the type and use of the collateral and when the debt was incurred. The Hanging Paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing. 11 U.S.C. § 1325(a)(undesignated paragraph) (2005).

The parties agree that Wells Fargo's claim in this case is a so-called "910 claim," but they disagree as to what treatment the Hanging Paragraph requires in a § 1325(a)(5)(C) surrender situation.

Pre-BAPCPA, a court probably could not confirm a plan over the objection of the secured

---

the valuation and of the propped disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. § 506(a)(1) (2005) (language of 506(a)(1) unchanged by BAPCPA).

-4-

creditor where a debtor proposed to surrender the collateral in full satisfaction of the debt. *See generally, First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 473 (6th Cir. B.A.P. 1998)(holding a Chapter 13 debtor could satisfy the allowed secured portion of a claim by surrendering the property securing the claim, with an unsecured claim remaining for the deficiency balance); *In re White*, 169 B.R. 526, 529 (Bankr. W.D.N.Y. 1994).  Section 506 applied pre-BAPCPA to allow parties to bifurcate almost all claims based on the value of the collateral in both § 1325(a)(B) and § 1325(a)(C) situations.  *In re Ezell*, 338 B.R. 330, 339-40.  A creditor might wait until disposition of its collateral to file an unsecured claims for its actual deficiency balance, but such a wait was not required.  *White*, 169 B.R. at 526. The § 506 bifurcation analysis remains the same under BAPCPA for non-910 claims, where a creditor's allowed secured claim is determined by the value of the collateral, while the Hanging Paragraph now provides that the entire claim is deemed secured in a 910 claim situation.

Other courts have examined the impact of the Hanging Paragraph in the context of § 1325(a)(5)(B), in which the debtor intends to retain the vehicle and pay for it through his Chapter 13 plan.  The majority of these courts have held that the Hanging Paragraph precludes a debtor from using § 506 to cram down a 910-day vehicle.  *In re Montoya*, 341 B.R. 41, 44 (Bankr. D. Utah 2006)(collecting citations)[4].    Another court held that 910 claims were wholly unsecured. *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006).  The *Carver* court reasoned that § 506(a) provided the only mechanism for a creditor to properly assert a secured claim in a bankruptcy case, and since the Hanging Paragraph prohibited its application to 910 claims, they must be treated as wholly unsecured.  *Carver*, 338 B.R. at 523.  This Court respectfully disagrees with this analysis.  Just because § 506 does not apply does not mean that there is no secured claim.  Section

---

[4]*In re Johnson*, 337 B.R. 269 (Bankr. M.D.N.C. 2006); *In re Robinson*, 338 B.R. 70 (Bankr. W.D. Mo. 2006); *In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); *In re Fleming*, 339 B.R. 716 (Bankr. E.D. Mo. 2006); *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006)(holding that bifurcation procedures found in 506 to be inapplicable to 910-day vehicle claims).

506(a) simply provides for the bifurcation of claims into secured and unsecured portions in accordance with the value of the collateral; it does not form the basis for a secured claim. *See Raleigh v. Illinois Dept. Of Revenue*, 530 U.S. 15, 20 (2000)("[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation. . ."). The only published decision this Court has found analyzing the impact of the Hanging Paragraph in the context of 1325(a)(5)(C), where the debtor intends to surrender the collateral, is *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006).[5] In *Ezell*, the creditor objected to the confirmation of the debtor's plan on the basis that it proposed to surrender the collateral in full satisfaction of the creditor's claim. The *Ezell* court held that surrender in full satisfaction was allowed when the claim the debtor is seeking to satisfy is a 910-day car claim. *Ezell*, 338 B.R. 330. This is the issue before the Court in this matter.

    The outcome in this case turns on the Court's interpretation of the Hanging Paragraph and its application. Wells Fargo urges the Court to determine that the Hanging Paragraph does not foreclose its ability to file an unsecured deficiency claim and argues that the rules of statutory construction require the Court to so find. The starting point for the Court's inquiry is the statutory language itself. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). Unless a statute is ambiguous, a court is required to apply it as it is written. *Caminetti v. United States*, 242 U.S. 470, 485 (1917). However, if a party shows that doing so would be contrary to congressional intent or if the literal application of the statutory language would result in an absurd outcome, then a court is permitted to interpret it otherwise. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (holding that if a statute's language is unambiguous, "the sole function of the courts is to enforce it according to its terms"), *citing Caminetti*, 242 U.S. at 485. First, the language of the Hanging Paragraph is not at all ambiguous to the Court. It simply states the circumstances in which § 506

---

[5]The court in *Johnson* also suggests in dicta that a return of a 910 vehicle to a creditor would satisfy a 910 claim in full. *Johnson*, 337 B.R. at 272 ("Such a creditor is entitled to the full payment of his contractual claim *or the return of the vehicle.*")(emphasis added).

does not apply to § 1325(a)(5). Although its physical placement in the Code may be confusing and its application may be disputed, the language itself is quite clear. As the Eleventh Circuit has recently stated, "courts are not commissioned to cure problems in the operation of statutory schemes Congress has designed." *In re Bracewell*, — F.3d —, 2006 W.L. 1814367, *11 (11th Cir., June 30, 2006). A court's function is therefore "to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them." *Id.*, *citing Wright v. Secy. for Dept't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Only Congress may alter a statute to eliminate problems with the way it operates; courts may not declare them ambiguous when they are not and then improve them to their liking. *Bracewell* at *11.

Since the language of the Hanging Paragraph is unambiguous, the Court must apply it as written unless doing so would yield a result that is either demonstrably at odds with congressional intent or absurd. Applying the Hanging Paragraph as written yields no such result. The *Ezell* court did a thorough review of the sparse legislative history on this matter, and concluded that Congress clearly intended to prevent bifurcation of the class of secured claims falling within the scope of the Hanging Paragraph. *Ezell*, 338 B.R. at 341. The *Ezell* court further concluded, and this Court agrees, that "[b]eyond these statements of Congressional intent, which basically mirror the statutory language, there is no further clarification. The court has no choice but to interpret the Hanging Paragraph as written, *i.e.*, that it applies to both Revised § 1325(a)(5)(B) and (C)." *Id.*, *citing Ron Pair*, 489 U.S. 235. It is up to the party challenging the plain meaning of a statute to show contrary congressional intent, and none has been shown. If Congress had intended the Hanging Paragraph to apply only to § 1325(a)(5)(B), and not to (C), then they could have said that. Instead, they made it applicable to § 1325(a)(5) as a whole and that is how this Court will apply it.

Wells Fargo also argues that a literal application of this statutory language would result in an absurd outcome. A result will only be deemed absurd if it is "unthinkable, bizarre, or demonstrably at odds with the intentions of its drafters." *In re Spradlin* 231 B.R. 254, 260

(Bankr. E.D. Mich. 1999)(citations omitted).  There is nothing absurd about the result that is mandated by the plain language of the Hanging Paragraph.  If the 910 claim of a creditor is fully secured upon a debtor's retention of the vehicle under § 1325(a)(5)(B), then it is completely logical that it is also fully secured upon surrender under § 1325(a)(5)(C).  There is nothing in legislative history that suggests that this is not the result Congress intended.  It is certainly not absurd.   Wells Fargo contends that the absurdity of the result originates from the fact that the changes in the Code wrought by BAPCPA were enacted to enhance the rights of secured creditors in bankruptcy.  While the Court agrees that some changes to the Code were certainly made with secured creditors in mind, it is equally clear to the Court that some of the changes may have been made for the benefit of unsecured creditors, such as credit card companies.  If 910 claim secured creditors' recovery is limited to their statutorily fully secured collateral, then there is quite possibly a greater dividend for the unsecured creditors in that case because the fully secured 910 claim creditor is prohibited from sharing in the distribution to unsecured creditors.

In further support of its arguments, Wells Fargo points out that the provision of BAPCPA which amends § 1325(a) is entitled "Protections for Secured Creditors."  The Hanging Paragraph does indeed offer significant protection to secured creditors by not allowing debtors to retain recently purchased vehicles while only paying a fraction of what is owed. Wells Fargo contends that it is "illogical and against the expressed intent of Congress" to interpret § 1325(a), including the Hanging Paragraph, to foreclose its right to a deficiency claim in this situation.   As far as this Court can ascertain, Congress never expressed any intent contrary to the result reached by the *Ezell* court and this Court, and it is illogical to conclude that the same language, *i.e.*, the Hanging Paragraph means something different in different contexts.  Secured creditors, like every other party to a bankruptcy case,  have to take both the good and the bad.  In bankruptcy, everyone gets a piece of the pie, but almost no one gets all they want or are owed.  Accordingly, it is entirely logical that Congress apportioned the pie to favor some creditors in some situations but others in different situations.  Both secured and unsecured creditors' lobbies were represented during the

drafting and enactment of BAPCPA. Like in bankruptcy, each probably received some of what they wanted, but neither received all they would have liked. Contrary to Wells Fargo's argument, the Court's interpretation and application of the Hanging Paragraph does not result in a "windfall" to debtors, as any benefit would inure largely to the unsecured creditors and not the debtor. Additionally, other policies espoused by Congress throughout the consideration and enactment of BAPCPA are also furthered by this interpretation. Through the amendments under BAPCPA, it is clear that Congress favors quick confirmations and payments of Chapter 13 Plans. A surrender in full satisfaction clearly impacts confirmation. If a debtor may not surrender in full satisfaction of the debt, the unsecured deficiency balance is not immediately known. In a close case, the amount of the deficiency could impact upon the feasibility of the plan and whether or not confirmation is even possible. Even in better-funded cases, the uncertainty would impact distribution to other unsecured creditors. Confirmation could take longer or would result in an uncertain distribution schedule until the collateral is disposed of and the deficiency balance established, the timing of which would be completely beyond the control of the trustee or the debtor.

All of Wells Fargo's other arguments can be disposed of summarily. First, the fact that § 502 was not amended to include this result is irrelevant, as this result is mandated by the Hanging Paragraph. Section 502, as amended by BAPCPA, also does not mention the fully secured status of retained 910-day collateral, but Wells Fargo is not arguing that the Hanging Paragraph therefore does not apply to such retained collateral. There was no need for Congress to do in § 502 what was already done by the Hanging Paragraph. Further, Wells Fargo's contention that state law controls and it is entitled to assert an unsecured deficiency claim is also without merit. The Bankruptcy Code is federal law that preempts state law where such laws conflict. *Pacific Gas and Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 204 (1983). Creditors' rights are curtailed in many ways once a debtor files bankruptcy due to the Bankruptcy Code's provisions regarding the automatic stay, discharge, and distribution of non-exempt assets, for example. *See*, *e.g.*, 11 U.S.C. §§ 362, 524, and 726. Therefore, the argument

that this interpretation of the Hanging Paragraph cuts off creditors' state law rights is not well-taken, as there is nothing inappropriate about bankruptcy laws affecting a creditor's right to recover under state law.  Finally, Wells Fargo's contention that this interpretation of § 1325(a) serves as a effective repeal of § 1322(b)(1) is misplaced as well, because it does not create unfair discrimination within a class of unsecured creditors.  The cases cited by Wells Fargo in support of its position were all decided pre-BAPCPA.  At that time a surrender in full satisfaction over the objection of the secured creditor would have discriminated unfairly amongst unsecured creditors.  However, the Debtor may be correct in his assertion that the Hanging Paragraph effectively creates a new class of creditors, those with 910 claims.   Even if there is not a new class of creditors, the effect of the Hanging Paragraph is to render a 910 car creditor fully secured.  Therefore, it is perfectly acceptable for a 910 car creditor to be treated differently than a general unsecured creditor, be it because it is of a separate class or because it is fully secured as a matter of law and thus there is no basis for its being an unsecured creditor.

When a creditor who holds a 910 claim files a secured claim, "the [Hanging Paragraph] precludes the use of [§ 506(a)] to reduce or bifurcate that claim into secured and unsecured components." *Ezell*, 338 B.R. at 330.  Under § 1325(a)(5), then, a creditor who holds a secured claim that is within the scope of  the Hanging Paragraph is fully secured up to the entire amount of the debt owed to it.  If the debtor chooses to retain the collateral under Section 1325(a)(5)(B), the Hanging Paragraph requires the debtor to treat the entire amount of the debt as secured and pay the full amount of the claim as secured over the life of the plan.  *See, e.g., In re Montoya*, 341 B.R. 41 (Bankr. D. Utah 2006). Accordingly, if the debt is fully secured by virtue of the language of the Hanging Paragraph when the debtor retains the collateral in accordance with § 1325(a)(5)(B) , then it also must be fully secured upon surrender of the collateral in accordance with § 1325(a)(5)(C).  The Hanging Paragraph does not make any distinction between (B) and (C), and so neither can the Court.  Such surrender would therefore satisfy the creditor's allowed secured claim in full and the creditor would not be entitled to an unsecured deficiency claim.

There is no language anywhere in § 1325 that suggests a different result. If the Hanging Paragraph renders a creditor's claim fully secured, it is fully secured in all contexts. The Hanging Paragraph by its very language applies to the entirety of § 1325(a)(5)–not just § 1325(a)(5)(B)–and the same language cannot mean one thing if applied to § 1325(a)(5)(B) and another when applied to § 1325(a)(5)(C) to suit the preferences of secured creditors. No deficiency or unsecured claim can result from a claim that is fully secured.

## CONCLUSION

The Court concludes that the Hanging Paragraph following § 1325(a)(9) allows the Debtor to surrender his Vehicle, which is the subject of a 910 claim, in full satisfaction of the debt owed to Wells Fargo. Accordingly, Wells Fargo's Objection to Confirmation will be overruled. A separate order shall be entered in accordance herewith.

DONE and ORDERED at Tallahassee, Florida this \_\_\_\_\_18th\_\_\_\_\_ day of July, 2006.

_____
LEWIS M. KILLIAN, JR.
U.S. Bankruptcy Judge

cc:   All parties in interest